IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

Philip Hemminger II,

Plaintiff

v.

Jim Goodman, Commissioner

Gene Berdanier, Warden

Mike Flannery, Captain

Individually and in their official capacities,

Defendants

---

COMPLAINT

Civil Action No. 1:12-cv-436

FILED
SCRANTON
MAR - 8 2012
MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

### I. JURISDICTION & VENUE

1. This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation under color of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2022. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. Section 2282 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2. The Middle District of Pennsylvania is an appropriate venue under 28 U.S.C. section 1391 (b)(2) because it is where the events giving rise to this claim occurred.

### II. PLAINTIFF

3. Plaintiff, Philip Hemminger II was at all times mentioned herein a prisoner of Schuylkill County Prison in the custody of the state of Pennsylvania. He is currently confined in S.C.I. Huntingdon in Huntingdon, Pennsylvania.

### III. DEFENDANTS

4. Defendant, Jim Goodman is the Commissioner of Schuylkill County Prison of Schuylkill County, Pennsylvania. He is legally responsible for the overall operation of the institution under his jurisdiction and for the welfare of all the inmates of that prison.

5. Defendant, Gene Berdanier is the warden of Schuylkill County Prison of Schuylkill County, Pennsylvania. He is legally responsible for the operation of Schuylkill County Prison and for the welfare of all the inmates of that prison.

6. Defendant, Mike Flannery is a Correctional Officer of Schuylkill County Prison of Schuylkill County, Pennsylvania who at all times mentioned in this complaint, held the rank of Captain. He is legally responsible for the operation of Schuylkill County Prison and for the welfare of all the inmates of that prison.

7. Each defendant is sued individually and in his official capacity. At all times mentioned in this complaint each defendant acted under the color of State law.

IV.   FACTS

8. See Attached Numbers 9-51.

V.   EXHAUSTION OF LEGAL REMEDIES

52. Plaintiff, Philip Hemminger II, attempted to use the prisoner grievance procedure available at Schuylkill County Prison but was continually denied. Grievance slips were initially available on the block but were removed and placed outside of the block to prevent inmates from filing Grievance slips.

53. The plaintiff attempted to file complaints using request slips but the request slips were never returned. Correctional Officers on duty refused to allow any inmate access to a Grievance slip, including the plaintiff in particular during the course of these incidents alleged herein.

VI.   LEGAL CLAIMS

54. Plaintiff alleges and incorporates by reference paragraphs 1-53.

55. The deliberate indifference to an obvious and serious harm, the denial of a basic human need, unsanitary conditions, denial of toilet facilities, and unsafe conditions due to violence violated plaintiff Philip Hemminger II's rights and constituted cruel and unusual punishment and due process violation under the Eighth and Fourteenth Amendment to the United States Constitution.

56. The Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparable injured by the conduct of the defendants unless this court grants the declaratory and injunctive relief which the plaintiff seeks. The plaintiff fears that these conditions will continue indefinitely until these actions take place and that the rights of the inmate population that continues to be housed there will continue to be violated.

VII.    PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this court enter judgment granting the plaintiff:

57. A declaration that the acts and omissions described herein violated plaintiff's rights under the Constitution and laws of the United States.

58. A preliminary and permanent injunction ordering defendants Jim Goodman, Gene Berdanier, and Mike Flannery to respectfully resign from their positions and that overcrowding at Schuylkill County Prison is relieved and that housing three inmates to a single cell is effectively banned from the institution as a whole.

59. Compensatory damages in the amount of $1,000,000 against each defendant, jointly and severally.

60. Punitive damages in the amount of $1,000,000 against each defendant.

61. A jury trial on all issues trial by jury.

62. Plaintiff's costs in this suit.

63. Any additional relief this court deems just, proper, and equitable.

Dated: 02-28-2012

Respectfully Submitted,

*[signature]*

Philip Hemminger II   KF1743

1100 Pike Street

Huntingdon, PA  16654


VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged there in are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Huntingdon, PA on 02-28-2012

*[signature]*

Philip Hemminger II   KF1743

1100 Pike Street

Huntingdon, PA 16654

IV. FACTS

9. Top ranking officials at Schuylkill County Prison violated my Eighth Amendment rights by knowingly and deliberately placing me in an overcrowded facility and forcing me to sleep on the floor (Exhibit A). Overcrowding also led to the direct denial of a basic human need (Exhibit B). It also led to unsanitary conditions and a lack of toilet facilities within the cell (exhibit C). It also caused an unreasonable risk of serious harm due to an uprise in violence from staff and inmates (Exhibit D and Exhibit E).

10. Top ranking officials are acting with deliberate and complete indifference to an obvious and serious harm. This factor in totality with the conditions and exhibits listed above constitutes cruel and unusual punishment and are in direct violation of the Eighth Amendment and the Due Process Clause which caused mental and emotional injuries on behalf of the plaintiff and undue pain and suffering.

11. "Confinement in a prison or isolated cell is a form of punishment subject to scrutiny under the Eighth Amendment."

    Hutto v. Finney, 437 U.S. 678 (1979)

12. "Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prison condition that exposes a prisoner to an unreasonable risk of serious harm."

    Helling v. McKinney, 509 U.S. 15,33 (1993).

13. "Prison officials act with deliberate indifference when they ignore an obvious and serious danger."

    Farmer v. Brennan, 511 U.S. 825,835 (1994)

14. "Prison conditions alone or in combination, may deprive inmates of minimal civilized measure of life's necessities and thus violate the Eighth Amendment."

    Rhodes v. Chapman, 452 U.S. 347 (1981)

15. "Double –celling has been found to be unconstitutional where it has been imposed in a decaying physical plant with inadequate staff and security."

    Tillery v. Owens, 907 F.2d 427 (3rd Cir. 1990).

16. "Overall conditions can rise to the level of cruel and unusual punishment when a specific deprivation of a single human need exists."

    Wilson v. Seiter, 501 U.S. 294, 304-305 (1991).

17. "Prisoners are entitled to sanitary toilet facilities."

DeSpain v. Uphoff, 264 F. 3d 965 (10th Cir 2001).

18. "Pretrial detainees have due process rights that are at least as great as the Eighth Amendment protections granted to convicted prisoners."

City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983).

19. "Jail conditions that amount to 'punishment' of a pretrial detainee violate Due Process Clause."

Bell v. Wolfish, 441 U.S. 520 (1979).

20. " Mental or emotional injuries may be used as a claim for any constitutional violation that does not cause a physical injury."

Thompson v. Carter, 284 F. 3d 411 (2d Cir 2002).

21. "Supervisors who create a policy or custom allowing or encouraging illegal acts or supervisors who were grossly negligent in managing people he or she were suppose to manage are not to be grated 'qualified immunity'."

Meriweather v. Coughlin, 879 F. 2d 1037 (2d Cir. 1989).

22. As previously stated, top ranking officials at Schuylkill County Prison violated my constitutional rights by forcing me into a cell that already contained two inmates, as was their custom to do so, and forcing me to sleep on the floor. This was due to the extreme overcrowding at Schuylkill County Prison, which every prison official is aware of. (Exhibit A)

23. I was also denied access to water in my cell for a period of 10 days when, due to no fault of my own, the sink in the cell broke and no longer produced water of any sort to the cell. The problem was reported to a Correctional Officer on duty who placed a work order in to maintenance to fix the sink. I asked this Correctional Officer if I could be placed into a different cell so that I may have access to water. The Correctional Officer informed me that he would have to ask his supervisors and that he had no power to do a cell transfer.

24. He soon returned stating that he spoke to Lieutenant on duty and that he was instructed to inform us that due to the overcrowding at the facility there were no cells available on the block to transfer me or the two men in my cell to, and that we would have to remain in our cell without water until the sink was fixed.

25. I then asked him if I could be moved to a different block, even if it was "in the hole" and he told me I could not and to remain in my cell. I then asked him if I could have a grievance slip and he stated I could, then never returned, denying me my grievance slip. I then asked other Correctional Officers through out the 10 days for a Grievance slip and was continuously denied.

26. This incident occurring in June, in a facility that lacked central air and had poor ventilation caused dehydration and heat exhaustion, which I was denied treatment for. I was allowed one cup of water a day during the 19 hours I was locked in my cell with two other inmates, who suffered the same treatment.

27. This went on for a period of 10 days until I want sent to the hole for refusing an additional 10 day "lock-in" in the cell which did not contain water. (Exhibit B)

28. I was also forced to remain in a cell on a separate occasion for 5 days without the use of toilet facilities. The toilet in the cell when I arrived on the block in October of 2011, did not flush and was unusable. Again I was forced to sleep on the floor and was denied a cell transfer or a grievance slip.

29. I was forced to remain in the cell for the 19 hours we were locked in without the use of toilet facilities for 5 days.

30. Soon after the toilet was temporarily operable it began to leak water into the cell and onto the floor, which I was forced to sleep on. I again asked for a cell transfer but was instead issued an extra towel to absorb the water. I was told that due to the extreme overcrowding at the facility the Correctional Officers were unable to move me.

31. The toilet was once again unusable being that when the toilet was flushed the contents of the water for the toilet bowl would leak out from underneath the toilet and onto the floor.

32. When the towel began to become so wet from the toilet water that would continually leak and began to leak through the towel, I asked the Correctional Officer if I could have an extra towel to replace it. He said I could not and instructed me to wring out the towel into the toilet. When I asked to be given gloves to do this the Correctional Officer denied my requests, forcing me to wring out the towel soaked in sewage water into the toilet by hand.

33. I was again forced to remain in the cell with the intolerable smell and forced to continue to wring out this towel to prevent the sewage water from soaking my bed, which was on the floor that I was forced to sleep on.

34. I was occasionally given a new towel in exchange for the old one, though this was rare. The toilet was fixed 5 days later and when I wrote a request slip to the Lieutenant, Warden, and the Captain explaining this situation, it was never returned. (Exhibit C).

35. Upon information and belief it was known to be true that Correctional Officers at Schuylkill County Prison were allowed to be assaultive towards inmates to the point of physical abuse. Correctional Officers would beat inmates in their cells and would challenge them to fights in the indoor yard located across the hall from the tier.

36. Correctional Officers would take inmates over to the yard and pull the curtain across the windows to conceal their activities. The Correctional Officers often used multiple personnel to outnumber and pummel the inmate. Even Sergeants and Officers were known to participate in these assaults, being that at the time there were no cameras.

37. The beaten and often bloody inmates would then be cuffed and walked or dragged to the hole, which the entire block could see from their cells. This caused a state of fear and paranoid that many inmates would then vent onto each other causing an extreme uprise in violence amount inmates as well.

38. There were often fights between inmates underneath the stairs on the block or in each other's cells since there was often inadequate security to prohibit such actions from taking place.

39. It is also upon information and belief that the reason Correctional Officers at Schuylkill County Prison used such force and intimidation on the inmate population was because of the officers in charge who had a complete indifference to these actions and as an attempt to control the overwhelming inmate population, which was due to overcrowding and inadequate staff.

40. It should be known that the overwhelming violence and complete disregard for the law is shown to be true as evident by the beating of inmate Brandon Moyer who was transferred to the hospital due to the seriousness of the injuries he sustained during his assault. The Correctional Officers' involved in the assault were brought to court and found guilty of the beating and were subsequently fired.

41. It is upon information and belief that they lost their jobs due to the publicity of the case, not for the actions taken by the Correctional Officers which were deemed acceptable before, even if it was something they did not officially endorse. (Exhibit D)

42. The case of Brandon Moyer was not an isolated incident and occurred while I was incarcerated at Schuylkill County Prison. I was also personally harassed by one of the Correctional Officers involved in the beating Jack Yeager as he would threaten to fight me and in one instance singled me out and terrorized me in front of the entire block. (Exhibit E)

43. It was also upon information and belief that some food in the kitchen served to inmates are marked "Unsafe for human consumption" on the boxes they arrive in.

44. It is also upon information and belief that the portions of food on the trays are tiny and that on day of inspections it is known for inmates to receive "special trays" to make it appear before the inspectors as though inmates are being served reasonable trays. I have personally witnessed this as well.

45. These top ranking officials should be held accountable for their deliberate indifference to an unreasonable risk of serious harm which constitutes cruel and unusual punishment.

46. The overcrowding at Schuylkill County Prison is the core issue which needs to be addressed and is the lead cause to the pain and suffering which led to my mental and emotional injuries suffered throughout my incarceration at this prison.

47. The plaintiff seeks an injunction requiring that the defendants from this suit willingly step down from their positions of power and that overcrowding is rectified in some manner to accommodate the inmate population to prohibit these conditions from ever happening again.

48. The plaintiff fears that these conditions will continue indefinitely until these actions take place and believes that it is in the best interests of the institution as a whole as well as to the inmate population that continues to be housed at Schuylkill County Prison.

49. The plaintiff also seeks punitive and compensatory damages to the amount of $1 million dollars and restitution for the plaintiff's costs in this suit for pain and suffering and for mental and emotional injuries caused by his incarceration at Schuylkill County Prison.

50. These top ranking officials should be held responsible for their deliberate indifference to an unreasonable risk of serious harm, thus violating the Eighth Amendment, this being cruel and unusual punishment.

51. For this reason my motions for an injunction and for monetary damages should be granted and any motions to dismiss my case on behalf of the defendants should be denied. These conditions suffered by the plaintiff from October of 2010 to July of 2011 and again upon his return in October 2011 for sentencing are not just unconstitutional, they are entirely inhumane.

INMATE MAIL
PA DEPARTMENT
OF CORRECTIONS

First Class Mail

1100 Pike Street
Huntingdon, PA 16654

No fee
No enclosed

United States District Court
for the Middle District of Pennsylvania
William J. Nealon Federal Building
& US Courthouse
235 North Washington Ave.
PO Box 1148
Scranton PA 18501

RECEIVED
SCRANTON
MAR 0 8 2012
_____ DEPUTY CLERK